IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

HETRONIC INTERNATIONAL, INC., )
              )
       Plaintiff,   )
              )
vs.              )  Case No. CIV-14-650-C
              )
HETRONIC GERMANY GMBH;    )
HYDRONIC-STEUERSYSTEME-GmbH; )
ABI HOLDING GMBH;       )
ABITRON GERMANY GmbH;     )
ABITRON AUSTRIA GmbH; and    )
ALBERT FUCHS,         )
              )
       Defendants.  )

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Amended Complaint Against Abitron Germany and Abitron Austria (referred to collectively as "Abitron" or "Abitron entities") (Dkt. No. 69). Plaintiff filed a Response (Dkt. No. 77). Defendants filed a Reply (Dkt. No. 83). Plaintiff also filed a supplemental Response (Dkt. No. 100), to which Defendants filed a Reply (Dkt. No. 101). The Motion is at issue.

### I. BACKGROUND

Hetronic International, Inc. ("Hetronic") designs and manufactures radio remote controls for use in heavy industrial equipment. Hetronic Germany GmbH ("H-Germany") and Hydronic-Steuersysteme-GmbH ("Hydronic"), both Defendants in this case, served as Hetronic's distributer and assembler for Germany and a number of central eastern European countries, respectively. The right for both H-Germany and Hydronic to assemble and distribute Hetronic's radio remote controls was governed by a Distribution Agreement.

Plaintiff alleges that H-Germany and Hydronic materially breached the Distribution Agreement causing Plaintiff to subsequently terminate the agreement. After the termination of the Distribution Agreement, Fuchs (former CEO of Hydronic) incorporated ABI–sole shareholder of Abitron–and also incorporated the Abitron entities and/or renamed the existing entities with the Abitron name. Plaintiff alleges that Fuchs transferred substantially all of H-Germany's and Hydronic's assets to Abitron, *inter alia*, making Abitron successors-in-interest to H-Germany and Hydronic. Plaintiff asserts many tort and contract claims against Defendants.

Defendants seek dismissal of all Plaintiff's claims based on a lack of personal jurisdiction. It is uncontested that the Court has personal jurisdiction over both H-Germany and Hydronic due to a forum selection clause agreed upon in the Distribution Agreement, naming Oklahoma as the forum of choice. Plaintiff argues that the forum selection clause extends to the Abitron entities because they are successors-in-interest of H-Germany and Hydronic.

Additionally, Defendants contend Plaintiff's eighth cause of action–conversion–is subject to dismissal because intangible property may not be the basis for a conversion claim under Oklahoma law.

## II. STANDARD OF REVIEW

**Personal Jurisdiction**

The Plaintiff has the burden of establishing personal jurisdiction over the Defendant. Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004). The Plaintiff need only

make a prima facie showing of personal jurisdiction in situations where the district court does not first conduct an evidentiary hearing on the issue of personal jurisdiction. Id. The Court must resolve all factual disputes in favor of the Plaintiff when determining whether the Plaintiff has established personal jurisdiction over the defendant. Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1075 (10th Cir. 1995).

Defendants argue jurisdiction in this Court is improper as Plaintiff has failed to demonstrate sufficient minimum contacts with Oklahoma and any such exercise of jurisdiction would offend "'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). However, even with a lack of minimum contacts, personal jurisdiction can be waived. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982). A forum selection clause gives parties the autonomy to choose the forum in which they will litigate in the event a contract dispute arises. Nat'l Equip. Rental, Ltd. v. Szukhent, 375 U.S. 311, 316 (1964). After both parties consent to personal jurisdiction in a certain forum, the need to evaluate a party's contacts with the forum evaporates. Allegiant Mktg. Group, Inc. v. Direct Innovations, LLC, No. CIV-15-40-D, 2015 WL 5038041, at *4 (W.D. Okla. Aug. 26, 2015).

### III. ANALYSIS

Plaintiff contends that the forum selection clause extends to the Abitron entities because they are successors-in-interest to H-Germany and Hydronic. "When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former." Home-Stake Prod. Co. v. Talon Petroleum., 907 F.2d 1012, 1020

(10th Cir. 1990). Owning a majority of the stock of another corporation, however, does not destroy the identity of a corporate entity. Rea v. An-Son Corp., 79 F.R.D. 25, 29 (W.D. Okla. 1978). Also, having the same individual serve as an officer in two corporations, without more, will not destroy the legal identity of either corporation. Id. However, a corporation will not be considered to be a separate corporate entity from the affiliated corporation when "one corporation is so organized and controlled and its business conducted in such a manner as to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation." Id. Put another way, the acts of a corporation can be imputed to a putative successor for the purpose of establishing personal jurisdiction when that corporation is an alter ego of the first.

There are several factors a court considers when determining whether a corporation is a successor in interest of another corporation rather than a separate entity. See generally Rea v. An-Son Corp., 79 F.R.D. 25 (W.D. Okla. 1978); Pharmacy Providers of Okla., Inc. v. Q Pharmacy, Inc., No. CIV-12-1405-C, 2013 WL 1688921 (W.D. Okla. Apr. 18, 2013) (unpublished). Below is the application of the specific facts of this case to those factors:

1. **Transfer of all stock to putative successor**. Most all of H-Germany's and Hydronic's assets were transferred to the Abitron entities with a small amount being left for the purposes of satisfying debt with Hetronic International.

2. **Common owner and/or directors and officers**. Fuchs is the owner of both Abitron entities as well as H-Germany and Hydronic. What is more, the Abitron entities are using the same facilities, management, employees,

4

customer lists, and product mark and dress as H-Germany and Hydronic. Further, H-Germany's CEO, Daniela Hammerer, has served as CEO of Abitron Germany and Abitron Austria.

3. **Putative successor was incorporated subsequent to suit or wrongdoing**. The Abitron entities were created only after the Distribution Agreement was terminated on June 6, 2014. A mere twenty days later, Fuchs incorporated Abitron Germany as Hydronic Control Systems Germany GmbH. Following this, Fuchs changed its name to Abitron Germany on July 16, 2014. Fuchs incorporated Abitron Austria on June 17, 2014, as Hydronic Control Systems Produktions and Vertriebs GmbH. Fuchs subsequently changed its name to Abitron Austria on August 8, 2014.

4. **Distinctions between corporation and putative successor are disregarded or confused**. Abitron has failed to make it clear that the Abitron entities are any different than H-Germany and Hydronic. The Abitron entities even went so far as sending letters to customers clarifying that the same business would be conducted as before with nothing more than a name change. For several months after the termination of the Distribution Agreement, H-Germany and Hydronic improperly continued to hold themselves out as authorized Hetronic distributers and assemblers and used the Hetronic trademarks. Further, H-Germany and Hydronic's website, even after the termination of the Distribution Agreement, continued to operate with the Hetronic name and

mark (even advertising the sale of Hetronic-branded parts). This made it very difficult for customers to identify the differences between H-Germany, Hydronic, and the Abitron entities.

Taking Plaintiff's allegations as true and all facts together, Abitron entities are successors-in-interest to H-Germany and Hydronic, and therefore the Court has an independent basis for exercising jurisdiction over them; the forum selection clause is imputed to the Abitron entities. This Court does not, however, find that Abitron is a successor-in-interest for purposes of liability. This finding is strictly to be construed to establish a basis for personal jurisdiction.

**<u>Conversion</u>**

Conversion occurs when an individual illegally exerts ownership over the property of another. <u>Shebester v. Triple Crown Insurers</u>, 1992 OK 20, ¶ 12, 826 P.2d 603, 608. In Oklahoma, "'only tangible personal property may be converted.'" <u>Architects Collective v. Gardner Tanenbaum Grp., L.L.C.</u>, No. CIV-08-1354-D, 2010 WL 2721401, at *5 (W.D. Okla. July 6, 2010) (quoting <u>Beshara v. S. Nat'l Bank</u>, 1996 OK 90, ¶ 30, n.26, 928 P.2d 280, 289 n.26, and <u>Shebester</u>, 1992 OK 20, ¶ 14, 826 P.2d at 608). Tangible property is defined as property that is corporeal, whereas intangible property "'has no intrinsic or marketable value, but is merely the representative or evidence of value.'" <u>United States ex rel. MMS Const. & Paving, L.L.C. v. Head, Inc.</u>, No. CIV-10-1340-M, 2011 WL 4954021, at *3 (W.D. Okla. Oct. 18, 2011) (quoting Black's Law Dictionary 1456 (6th ed. 1990)).

The Supreme Court of Oklahoma has not recognized a conversion claim for intellectual property. KT Specialty Distribution, L.L.C. v. Xlibris Corp., No. 08-CV-0249-CVE-SAJ, 2008 WL 4279620, at *4 (N.D. Okla. Sept. 11, 2008). Defendants allege Plaintiff's conversion claim should be dismissed because Plaintiff's Amended Complaint only mentions intangible property that has allegedly been converted by Defendants. However, Plaintiff's response specifies tangible property that was purportedly converted by Defendants, including documents, software, and drawings. Because Defendants have identified tangible property, Defendants' Motion to Dismiss Plaintiff's conversion claim is denied.

## IV. CONCLUSION

Accordingly, Motion to Dismiss Amended Complaint Against Abitron Germany and Abitron Austria (Dkt. No. 69) is DENIED.

IT IS SO ORDERED this 22nd day of September, 2015.

ROBIN J. CAUTHRON
United States District Judge