# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HETRONIC INTERNATIONAL, INC., ) ) ) Plaintiff, ) ) -vs- ) ) HETRONIC GERMANY, GmbH, et al., ) ) ) Defendants. ) | Case No. CIV-14-650-F |

## ORDER

On October 27, 2021, the court held a telephonic conference with counsel as to matters relevant to the geographic scope of the court's permanent injunction. Although it was the court's intention at that conference to set a date for a hearing with respect to that issue, the court, after discussion with counsel, concluded that additional briefing was necessary. Specifically, the court requested briefing as to "what the plaintiff has to prove to establish it 'currently markets or sells products' in any given country." Doc. no. 509. Both parties have complied. Doc. nos. 511 and 512.

In its briefing, plaintiff addresses "what activities constitute 'market[ing] or sell[ing][,]'" and specifically, "what activities constitute 'market[ing].'" Doc. no. 511, ECF p. 5; p. 6 n. 1. Plaintiff submits that "it 'markets' its products when it offers its products for sale in a given country, whether through a website, resellers, international tradeshows, or major electronic publications." *Id.* at ECF

p. 5.  For its definition, plaintiff relies upon a Supreme Court case, Asgrow Seed Co. v. Winterboer, 513 U.S. 179 (1995), which involved alleged violations of the Plant Variety Protection Act of 1970 (PVPA), 7 U.S.C. § 2321, *et seq.*, in connection with sales of protected seeds.  The central question in the case was whether "the [defendants'] planting and harvesting were conducted 'as a step in marketing' [plaintiff's] protected seed varieties for growing purposes."  *Id*. at 186-87.  Because the PVPA did not define the term "marketing," the Supreme Court, following precedent, gave the term its ordinary meaning.  *Id*. at 187.  According to the Court, the word "ordinarily refers to the act of holding forth property for sale, together with the activities preparatory thereto . . .  The word does not require that the promotional or merchandising activities connected with the selling be extensive."  *Id*. at 187.  Plaintiff points out that the Lanham Act likewise does not define the term "marketing."  It maintains that the Supreme Court's approach to the definition of "marketing" is consistent with the dictionary definitions of the term.  Specifically, it cites Black's Law Dictionary (9th ed. 2009), which defines the term as "[t]he act or process of promoting and selling, leasing, or licensing products or services[;]" and Merriam-Webster Online, https://www.merriam-webster.com/dictionary/market, which defines the term as "expos[ing] for sale in a market[;]" and finally, Oxford English Dictionary (3d ed. Dec. 2000), https://bitly/3CwkI1n, which defines the term "[t]o sell in a market; to bring or send to a market; . . . to place or establish (a product) on the market."  Plaintiff points out that many lower courts have looked to the ordinary definition of the term when determining whether a party has "marketed" a product.

Plaintiff maintains that Asgrow conclusively resolves the question before the court, and accordingly, the "only fact [it] must show to merit an injunction in

2

a given country is that it offers its product for sale to customers in that country." Doc. no. 511, ECF p. 8. Plaintiff asserts that the Tenth Circuit's remand order recognized that "marketing" and "selling" are "two distinct inquiries." *Id*. (emphasis omitted). Thus, plaintiff posits that it "can show entitlement to an injunction if it sells to a specific country; but it can *also* show entitlement to an injunction if it *offers* to sell, even without proof of an ensuing sale." *Id*. (emphasis in original). Plaintiff maintains that it need not show that "it has superior trademark rights in each country" for entitlement to an injunction. *Id*., ECF p. 20.

Defendants respond that "[w]hat the plaintiff must prove is that which satisfies the [Tenth Circuit's] central reason for reversing the injunction: the issuance of an injunction that reached beyond '[the] Lanham Act – the statute upon which the district court relied . . . .'" Doc. no. 512, ECF p. 1 (quoting Hetronic International, Inc. v. Hetronic Germany GmbH, 10 F.4th 1016, 1046 (10th Cir. 2021)). In the end, defendants contend, the court's injunction "must find 'support' in the Lanham Act." *Id*. Defendants point out that the Tenth Circuit explained in its decision that plaintiff "*isn't entitled to injunctive relief in markets it hasn't actually penetrated.*" *Id*., ECF p. 2 (quoting Hetronic, 10 F.4th at 1047, emphasis in original). Defendants thus assert that "[u]nder the statute relied upon--the Lanham Act--plaintiff must demonstrate 'use in commerce' of the trademarks in each territory in question." *Id*., ECF p. 2. The Lanham Act, defendants point out, defines the term "use in commerce" as the "bona fide use of a mark in the ordinary course of trade" and "a mark shall be deemed to be in use in commerce" when "it is placed in any manner on the goods . . . and . . . the goods are sold or transported in commerce." *Id*. (quoting 15 U.S.C. § 1127, emphasis omitted). Defendants assert that plaintiff seizes on the language "markets or sells

its products" that forms only part of the Tenth Circuit's direction.  In so doing, defendants contend, plaintiff urges the court to ignore the language of the Lanham Act and its plainly worded "use in commerce" requirement.  Defendants posit that plaintiff's argument then leads to citation of cases that have nothing to do with the Lanham Act and provide no meaningful guidance.  In sum, defendants contend that "[f]or each country in which [p]laintiff claims to have trademark rights, [p]laintiff must prove entitlement to trademark protection under the Lanham Act.  Plaintiff must show 'use in commerce' in each such country and for each trademark." *Id.*, ECF p. 6.

Defendants are correct that the Tenth Circuit stated that plaintiff "isn't entitled to injunctive relief in markets it hasn't actually penetrated." Hetronic, 10 F.4th at 1047.  In support of its statement, the Tenth Circuit quoted from a Fourth Circuit case, Emergency One, Inc. v. American Fire Eagle Engine Co., Inc., 332 F.3d 264, 269 (4th Cir. 2003), wherein the Fourth Circuit stated: "[E]ven the owner of a federally registered mark—who enjoys the presumption of nationwide priority—is not entitled to injunctive relief *except in the area actually penetrated through use of the mark*." Hetronic, 10 F.4th at 1047 (internal quotation marks omitted, citation, and footnote omitted).

But as plaintiff also points out, the Tenth Circuit at the end of its discussion with respect to the permanent injunction specifically stated: "Accordingly, we narrow the injunction to the countries in which [plaintiff] currently markets or sells its products." Hetronic, 10 F.4th at 1047.  The Tenth Circuit, by use of the word "or," indicates that there are two distinct inquiries—markets or sells.  The Tenth Circuit does not define "markets," and the term "marketing" is not addressed by the Lanham Act.  The court therefore finds that the term should be

4

given its ordinary meaning.  And the court follows the definition as set forth by the Supreme Court in Asgrow.  However, as stated below, plaintiff will have to show that it has actually penetrated a market through marketing or selling its product.

The court notes that the language from Emergency One—"[not] entitled to injunctive relief except in the area actually penetrated"—comes from another Fourth Circuit case, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, 43 F.3d 922, 932 (4th Cir. 1995).  In that case, the Fourth Circuit stated:

> Under the Lanham Act, the senior owner of a federal registration has superior priority over all junior users, but a court will enjoin the junior user only if the registrant is likely to enter, or has entered, the junior user's trade territory.  As a leading commentator has explained, 'the registrant has a nationwide *right*, but the injunction *remedy* does not ripen until the registrant shows a likelihood of entry into the disputed territory . . . . [The junior user's] use of the mark can continue only so long as the federal registrant remains outside the market area.' 2 J. Thomas McCarthy, McCarthy on Trademarks § 26.14[1] at 26-52 (3d ed. 1992) [now 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 26.33 (5th Ed. December 2021 Update)] (citing Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358 (2d Cir. 1959).  This Court applied this rule in *Armand's Subway, Inc. v. Doctor's Associates, Inc.*, 604 F.2d 849, 849-50 (4th Cir. 1979), in which the court reasoned:
>
>> After the Lanham Act, nationwide protection was extended to registered marks, regardless of the area in which the registrant actually used the mark, because under 15 U.S.C. 1072 registration

> constituted constructive notice to competing users. *Dawn Donut Co. v. Hart's Food Stores*, 267 F.2d 358, 362 (C.A.2, 1959). However, as held in that case, the protection is only potential in areas where the registrant in fact does not do business. A competing user could use the mark there until the registrant extended its business to the area. Thereupon the registrant would be entitled to exclusive use of the mark and to injunctive relief against its continued use by prior users in that area. *Ibid.*, 360, 365.
>
> From this reasoning, the court concluded that 'in no case would [the party alleging infringement] be entitled to injunctive relief except in the area actually penetrated by [that party].'

Lone Star, 43 F.3d at 932 (emphasis added).

The Fourth Circuit in Emergency One included a footnote, footnote number 3, right after the language that the owner of a federally registered mark is not "entitled to injunctive relief except in the area actually penetrated through use of the mark." 332 F.3d at 269. That footnote was omitted by the Tenth Circuit. Footnote 3 quotes the language from Lone Star, that the owner of a registered mark "'has a nationwide *right*, but the injunctive *remedy* does not ripen until the registrant shows a likelihood of entry into the disputed territory . . . . [The junior user's] use of the mark can continue only so long as the federal registrant remains outside the market area.'" *Id*. at n. 3.

The "likelihood of entry into the disputed territory" language and other language from Lone Star—"likely to enter" and "extended its business to the

6

area"—in the court's view, support the "markets or sells its products" criterion used by the Tenth Circuit. While defendants rely upon the Emergency One's specific language "through use of the mark" to support its argument that plaintiff must demonstrate "use in commerce" of the trademarks in each country, the court is not persuaded that that language supports such argument. Further, the court notes the Tenth Circuit did not include that language in its statement that plaintiff "isn't entitled to injunctive relief in markets it hasn't actually penetrated." Hetronic, 10 F.4th at 1047. The court concludes that plaintiff need not show "use in commerce" in each country and for each trademark. In other words, plaintiff need not show it has superior trademark rights in a country to be entitled to an injunction with respect to that country.

Accordingly, with respect to the geographic scope of the permanent injunction, the court **ORDERS** as follows:

1. The geographic scope of the permanent injunction will include the countries in which plaintiff currently markets or sells its products. This requires plaintiff to have actually penetrated a market. For this purpose, "currently" marketing or selling will include countries in which plaintiff has marketed or sold relevant products[1] within six months before the hearing.

2. If a relevant product has not actually been sold to a customer in a market (i.e., a country) within six months, then plaintiff will have to show that it currently (i.e., within six months) *markets* a relevant product in that market.

---

[1] "Relevant products" includes plaintiff's products having the Hetronic mark, or Product Mark or the Trade Dress (all as defined in the jury instructions in this case).

This can be shown by proof of any of the following, occurring within six months: (i) actual promotional activity in a country, relating to a relevant product, or (ii) actual promotional activity directed specifically to one or more identifiable potential customers in a country, relating to a relevant product, or (iii) a web-based offering[2] of relevant products.

3. In preparing for the hearing, and at the hearing, the parties would be well-advised to differentiate between countries in which products have been marketed only via a web-based offering, and countries in which plaintiff has marketed its products by more active means.  The reason for this is that the court intends to include in the permanent injunction both (i) countries in which products have been marketed only via web-based offerings, and (ii) countries in which plaintiff has marketed its products by more active means.  However, given the possibility that a reviewing court may conclude that the permanent injunction should not include countries in which products have been marketed only via web-based offerings, the court wishes to separate the two categories with clarity sufficient to avoid the necessity of yet another hearing.

4. For purposes of determining the scope of the permanent injunction, "marketing" in a country does not require plaintiff to have superior trademark rights in that country.

---

[2] As used in this order, "web-based offering" means marketing via a webpage or website through which a customer or potential customer could actually transact the purchase of a relevant product, as opposed to a webpage or website with only passive presentation of product-related information.  A market is not "actually penetrated" by the mere existence of a webpage or website with only passive presentation of product-related information.

5. Plaintiff has the burden of proof with respect to all matters relating to the geographic scope of the permanent injunction.

6. A telephonic scheduling conference will be held on December 13, 2021, at 2:00 p.m. Counsel should be prepared to discuss (i) the need for discovery in preparation for the hearing, and (ii) the setting of a date for the hearing. At the scheduling conference, the court will set a date for an initial disclosure by Hetronic of (i) the countries as to which it plans to prove it currently *sells* relevant products, and (ii) the countries as to which it plans to prove it currently *markets* relevant products, as those terms are used in this order.

DATED this 3rd day of December, 2021.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

14-0650p112.docx